## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **LEARNING CARE GROUP, INC.,** | : | **CIVIL ACTION NO.** |
| **Plaintiff/Consolidated Defendant,** | : | **3:13-CV-01540 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **CARLENE ARMETTA, DAVID ARMETTA,** | : | |
| **and ASPIRA DIRECT MARKETING, LLC,** | : | |
| **Defendants/Consolidated Plaintiffs.** | : | **September 30, 2014** |

### MEMORANDUM OF DECISION
### DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
### DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT [Dkt. #43]

### I.      Introduction

The Plaintiff Learning Care Group, Inc. ("LCG" or "Plaintiff") brings an
action against Defendants ("Defendants") Carlene Armetta ("Mrs. Armetta"),
David Armetta ("Mr. Armetta") and Aspira Marketing Direct, LLC ("Aspira")
alleging various claims arising out of Defendants' former business relationship
with LCG.  The Plaintiff asserts claims of breach of fiduciary duty (against Mrs.
Armetta) (Count I); aiding and abetting breach of fiduciary duty (against Mr.
Armetta and Aspira) (Count II); constructive fraud (against Mrs. Armetta) (Count
III); conversion (against all three Defendants) (Count IV); violations of the
Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110b(a) *et seq.*
("CUTPA") (against Mr. Armetta and Aspira) (Count V); and unjust enrichment
(against all three Defendants) (Count VI).  Defendants have moved to dismiss the
action in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim
upon which relief may be granted, or in the alternative, for a more definite

statement pursuant to Fed. R. Civ. P. 12(e).  For the reasons that follow, Defendants' Motion to Dismiss is DENIED and Defendants' Motion for a More Definite Statement is DENIED.

## II.    Factual Background

The following facts and allegations are taken from the Plaintiff's Complaint, unless otherwise stated, and are deemed to be true for the purpose of these motions.   [3:13-cv-01540-VLB, Dkt. #1, Complaint (hereinafter "Compl.")].

Plaintiff LCG is a private company organized and existing under the laws of the state of Michigan, with its principal place of business located in Novi, Michigan.  [Compl. at ¶ 3].  Plaintiff operates over 900 childcare and education centers nationwide.  [*Id.* at ¶ 9].  Defendants Mr. and Mrs. Armetta are individuals residing at 510 Woodbine Road, Stamford, Connecticut.  [*Id.* at ¶¶ 4-5].  Defendant Aspira is a private company organized and existing under the laws of the state of Connecticut with its principal place of business located at the same address.  [*Id.* at ¶ 6].  Aspira is co-owned by Mrs. and Mr. Armetta.  [*Id.* at ¶ 10].

Plaintiff alleges that in February 2009, it engaged Aspira to assist with its direct mail marketing efforts.  [*Id.* at ¶ 10].  Plaintiff alleges that in light of the high fees charged by Aspira, among other factors, Plaintiff later decided to terminate its relationship with Aspira and instead hired Mrs. Armetta as a full-time employee to handle LCG's direct mail marketing efforts.  [*Id.*].  Plaintiff alleges that it hired Mrs. Armetta as a full-time, at-will employee on or around January 28, 2010.  [*Id.* at ¶ 11].  Plaintiff alleges that for most of Mrs. Armetta's time at LCG, she was Vice President of Integrated Marketing, and reported to the Chief

2

Marketing Officer.  [*Id.*].  From January 2013 to April 2013, Mrs. Armetta was LCG's Interim Chief Marketing Officer and reported to LCG's Chief Executive Officer.  [*Id.* at ¶ 11].  Plaintiff alleges that Mrs. Armetta was a senior employee and that throughout her tenure, LCG "put its faith, confidence and trust in Mrs. Armetta to administer LCG's direct mail marketing program."  [*Id.* at ¶¶ 1, 11].

Plaintiff alleges that LCG used a vendor called Vertis Communications, Inc. ("Vertis") to print direct mail marketing materials for LCG.  [*Id.* at ¶ 12].  Plaintiff further alleges that, before Mrs. Armetta was hired as a full-time employee and unbeknownst to Plaintiff, Defendants negotiated a commission agreement with Vertis under which Vertis agreed to pay commissions to Aspira based on any LCG business that Defendants could steer toward Vertis.  [*Id.* at ¶ 13].  Plaintiff alleges that this agreement remained in place after Mrs. Armetta became a full-time employee of LCG, and that Mrs. Armetta never disclosed the arrangement to LCG.  [*Id.*].

Plaintiff alleges that under the terms of Vertis and Aspira's agreement, Vertis agreed to pay Aspira (a) a per-piece commission in the amount of $0.03 of the price per piece on the direct mail marketing pieces Vertis printed for LCG, and (b) a 20% commission of the data lists that Vertis sold to LCG to distribute the direct marketing mail.  [*Id.* at ¶ 14].  Plaintiff further alleges that, starting in September 2011, the price-per-piece commission was increased to $0.05.  [*Id.* at ¶ 17].  Plaintiff alleges that on top of these commission payments, Aspira also directed Vertis to inflate its invoices to LCG by an additional 10% in order to pay a further unauthorized premium to Aspira for "creative" services.  [*Id.* at ¶ 16].

3

Plaintiff alleges that Mrs. Armetta never disclosed these arrangements to LCG. [*Id.* at ¶ 17]. Plaintiff alleges that Defendants directed Vertis to pass the cost of these commissions and premiums on to LCG by inflating the invoices Vertis submitted to LCG without disclosing the payments; then, on the other side, Mrs. Armetta, as the executive responsible for LCG's direct mail marketing efforts, reviewed and approved LCG's payment of Vertis's inflated invoices. [*Id.* at ¶¶ 15-17]. Plaintiff further alleges that the total amount of undisclosed payments made by Vertis to Aspira (and passed on to LCG via inflated invoices) is more than $750,000. [*Id.* at ¶ 18].

Plaintiff alleges that in October 2012, Vertis filed for bankruptcy protection and its assets were purchased by a company called Quad Graphics ("Quad"). [*Id.* at ¶ 19]. Plaintiff alleges that when Quad refused to participate in Defendants' secret payment scheme, Mrs. Armetta arranged for LCG to retain a new print vendor, FCL Graphics ("FCL"). [*Id.* at ¶¶ 19-20]. Plaintiff further alleges that FCL's work for LCG began in or around January 2013, around the time Mrs. Armetta was appointed Interim Chief Marketing Officer at LCG. [*Id.* at ¶ 20].

Plaintiff alleges that Defendants immediately put into place the same arrangement with FCL as they had previously enjoyed with Vertis, and in fact doubled their commission, negotiating an arrangement under which Aspira would be paid a per-piece commission of $0.095 on all LCG business steered toward FCL as well as a 10% premium for Aspira's "creative" work. [*Id.* at ¶ 21]. Plaintiff alleges that, once again, this arrangement was not disclosed to LCG. [*Id.*]. Instead, the cost of FCL's payments to Aspira were passed on to LCG in the same

4

way that the Vertis payments had been: Mr. and Mrs. Armetta directed FCL to inflate its invoices to LCG in order to cover the cost of the undisclosed payments to Aspira, and then Mrs. Armetta approved LCG's payment on the invoices in her capacity as Interim Chief Marketing Officer for LCG.  [*Id.* at ¶ 22].  Plaintiff alleges that the total amount of undisclosed payments made by FCL to Aspira (and passed on to LCG via inflated invoices) is approximately $350,000.  [*Id.* at ¶ 23].

Plaintiff alleges that in August 2013, LCG engaged a prominent law firm to conduct an independent investigation of whether Mrs. Armetta had violated LCG policies or any applicable laws.  [*Id.* at ¶ 24].  Plaintiffs allege that, following the investigation, LCG terminated Mrs. Armetta's employment after concluding that she had "engaged in business dealings that were egregious and direct violations of the Company's Code of Conduct, specifically the prohibition against conflicts of interest, the improper release of confidential information, and financial interests in other businesses."  [*Id.* at ¶ 24 and Ex. A].

Plaintiff alleges that the policies Mrs. Armetta violated are set forth in LCG's Employee Handbook.  [*Id.* at ¶ 25 and Ex. B].  Plaintiff alleges that Mrs. Armetta signed an acknowledgment of receipt stating that she received a copy of the Employee Handbook and agreed to conform to its guidelines.  [*Id.* at ¶ 29 and Ex. C].  The Handbook sets forth a Code of Business Conduct and Ethics ("Code of Conduct") that includes a conflicts of interest policy stating, *inter alia*, that "[u]nless approved in advance by the Ethics Compliance Officer, neither an employee nor his or her spouse . . . may directly or indirectly have a financial interest (whether as an investor, lender, employee, or other service provider) in a

competitor, customer, or supplier if that employee or his/her subordinates deal directly or indirectly with that customer or supplier in the course of his/her job with the company." [*Id.* at ¶ 27 and Ex. B]. Plaintiff alleges that Mrs. Armetta's arrangement with Aspira and Vertis was a conflict of interest which violated the Code of Conduct, and that Mrs. Armetta cannot claim that she ever made full disclosure of that arrangement to the Ethics Compliance Officer, or that her conflict of interest was ever approved in advance by the Ethics Compliance Officer, as required by the Code of Conduct. [*Id.* at ¶¶ 31-32]. Plaintiff further alleges that no one at LCG was aware that Aspira had commission agreements with Vertis and FCL, that Aspira was directing these vendors to inflate their invoices to cover the commissions without disclosing those costs, or that Mrs. Armetta was knowingly approving payment of the inflated invoices to cover a benefit that was going to a company she co-owned. [*Id.* at ¶ 32].

The Plaintiff alleges that through Defendants' undisclosed agreements with Vertis and later FCL, Defendants have obtained the benefit of more than $1 million in overcharges from LCG. [*Id.* at ¶ 1]. Plaintiff now brings this action to recover compensatory and punitive damages; the disgorgement of Defendants' revenue and compensation; attorneys' fees, costs and expenses; and pre- and post-judgment interest. [*Id.*].

III.   **Defendants' Rule 12(b)(6) Motion to Dismiss**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*,

6

556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### A.  Count I: Breach of Fiduciary Duty (against Mrs. Armetta)

Plaintiff contends that Mrs. Armetta breached her fiduciary duties of care and undivided loyalty to LCG by failing to disclose her conflict of interest, awarding LCG's business to Vertis and FCL despite that conflict of interest, and authorizing inflated payments by LCG to Vertis and FCL to be passed on to her company, Aspira.  [Compl. at ¶¶ 33-37].  Defendants move to dismiss this claim on the ground that Plaintiff has failed to plead sufficient facts establishing that Mrs. Armetta had a fiduciary duty to LCG or that Mrs. Armetta breached that duty. [Dkt. #43, Defendants' Motion to Dismiss Plaintiff's Complaint (hereinafter "MTD") at 14-16].

"The essential elements [of] a cause of action for breach of fiduciary duty under Connecticut law are: (1) That a fiduciary relationship existed which gave

rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any matter relating to the plaintiff; (2) That the defendant advanced his or her own interests to the detriment of the plaintiff; (3) That the plaintiff sustained damages; [and] (4) That the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." *See, e.g., Ives Bros., Inc. v. Keeney*, 2000 WL 35775696, at *5 (Conn. Super. Ct. Oct. 27, 2009).

The plaintiff has the burden of proving the existence of a fiduciary relationship. *See Murphy v. Wakelee*, 247 Conn. 396, 400 (1998). "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." *Id.* (citation omitted). The Connecticut Supreme Court has deliberately declined to define "a fiduciary relationship in precise detail and in such a manner as to exclude new situations." *Konover Dev. Corp. v. Zeller*, 228 Conn. 206, 223 (1994) (quoting *Harper v. Adametz*, 142 Conn. 218, 225 (1955)). Rather, a fiduciary duty may exist in many different kinds of relationships "in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." *Dunham v. Dunham,* 204 Conn. 303, 320 (1987).

The Court finds that Plaintiff has pled sufficient facts that, if true, would support the existence of a fiduciary relationship between LCG and Mrs. Armetta. Plaintiff states in its Complaint that Mrs. Armetta was a senior employee who served as both Vice President of Integrated Marketing, and later, Interim Chief Marketing Officer.  [Compl. at ¶1, 11].  Plaintiff also alleges that Mrs. Armetta was the executive responsible for direct mail marketing efforts at LCG, and that in that capacity she was the person who was entrusted with reviewing and approving payment of Vertis's and FCL's invoices.  [*Id.* at ¶¶ 15-17, 22].  Plaintiff has therefore adequately alleged that Mrs. Armetta was in a position of superior knowledge and influence with regards to those vendors' services and payment.

Defendants' insistence that Mrs. Armetta could not have had a fiduciary duty to LCG because she was "simply an employee of LCG's marketing department, and completed the tasks she was assigned by her superiors" does nothing to defeat Plaintiff's claim.  [Dkt. #47, Defendants' Reply in Further Support of Its Motion to Dismiss (hereinafter "Reply") at 3].  Connecticut courts consistently recognize that an employee owes his or her employer a fiduciary duty with respect to matters within the scope of his or her agency.  *See Garden Catering-Hamilton Ave., LLC v. Wally's Chicken Coop, LLC,* 2014 WL 810821, at **13-16 (D. Conn. Feb. 28, 2014) (surveying Connecticut state court cases).  Here, Plaintiff has alleged that it was in the scope of Mrs. Armetta's agency to review and approve vendor invoices.  [Compl. at ¶ 15].  Nor can Defendants properly argue that Mrs. Armetta did not in fact review and approve these invoices. Defendants' factual disagreement is not a basis for a motion to dismiss.

The Court also finds that Plaintiff has adequately pled that Mrs. Armetta breached her fiduciary duty to LCG.  Plaintiff has alleged that, by entering into undisclosed agreements with Vertis and FCL to earn secret commissions on LCG business, directing Vertis and FCL to inflate their invoices to FCL for her company's benefit, and then approving those invoices on LCG's behalf, Mrs. Armetta used her position of trust and confidence to advance her own interests to Plaintiff's detriment, and that Plaintiff was harmed as a result.  [Compl. ¶¶ 1, 13-23, 33-38].  Defendants do not dispute these allegations except to state that Defendants' business dealings were not in fact unfair to LCG.  [MTD at 15-16].  As already stated, the Defendants' disagreement with Plaintiff's allegations is not a basis for a motion to dismiss.  Accordingly, Defendants' Motion to Dismiss Count I is DENIED.

### B. Count II: Aiding and Abetting Breach of Fiduciary Duty (against Mr. Armetta and Aspira)

Plaintiff asserts that Mr. Armetta and Aspira knowingly and substantially assisted Mrs. Armetta in breaching her fiduciary duties to LCG by negotiating undisclosed commissions in exchange for steering LCG projects to Vertis and FCL, and then directing Vertis and FCL to inflate the invoices they submitted to LCG to conceal those payments.  [Compl. at ¶¶ 13-23; 39-44].  Defendants move to dismiss this claim on the grounds that Plaintiff has not alleged that Mr. Armetta and Aspira were aware that Mrs. Armetta's actions constituted a breach of her fiduciary duties, or that Mr. Armetta and Aspira substantially assisted her in breaching those duties.  [MTD at 16-17].

In order to establish aiding and abetting liability under Connecticut law, a plaintiff must show that: "(1) the party whom the defendant aids [performed] a wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; [and] (3) the defendant ... knowingly and substantially assist[ed] the principal violation." *Efthimiou v. Smith*, 268 Conn. 499, 505 (2004). In order to be "generally aware," an aider or abetter must have actual knowledge of the underlying tort or act with reckless indifference to the possibility that the underlying tort is occurring. *Master–Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F.Supp.2d 109, 121 (D. Conn. 2010) (citing *Fidelity Nat'l Title Ins. Co. v. Kissel*, 2008 WL 4151299, at *2 (Conn. Super. Ct. Aug. 18, 2008). Thus, a plaintiff alleging that a defendant has aided and abetted a breach of fiduciary duty must plead "knowledge by the aider that the fiduciary is breaching a duty." *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 100, 104 (D. Conn. 2010) (citing *Stanley Ferber & Assocs. v. Northeast Bancorp., Inc.*, 1993 WL 489334, at *6 (Conn. Super. Ct. Nov. 16, 1993)).

An employee's duty not to exploit their employer's confidential information or their position for their own gain to the detriment of their employer is firmly established under Connecticut common law. "The law is well settled that knowledge acquired by an employee during his employment cannot be used for his own advantage to the injury of the employer during the employment . . . . It matters not that there is no specific agreement on the part of the employee not to disclose the knowledge he has so acquired . . . . Employees are bound by such an

implied obligation even though they be not under contract at all." *Allen Mfg. Co. v. Loika,* 145 Conn. 509, 514 (1958) (citations and internal quotation marks omitted). Further, candor and honesty in the conduct of one's business is a fundamental duty under Connecticut common law:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).

Plaintiff has plausibly alleged that Mr. Armetta and Aspira knew Mrs. Armetta owed, and was breaching, these duties to LCG. First, Plaintiff alleges that Mr. Armetta worked with Mrs. Armetta to perpetrate a scheme whereby Mrs. Armetta caused LCG to pay Aspira—the Armettas' company—and Mr. Armetta commissions and other amounts embedded in bills submitted by Vertis. [Compl. at ¶¶ 1-23]. Specifically, Plaintiff alleges that Defendants all knew the commissions and additional premiums were concealed within Vertis's and FCL's invoices so that LCG would not know what Mr. Armetta and Aspira were being paid. [*Id.* at ¶¶ 15, 21-22]. This knowledge evinces Mr. Armetta and Aspira's consciousness of Mrs. Armetta's wrongdoing. Furthermore, Aspira and Mr. Armetta could reasonably foresee that LCG would rely and indeed knew that LCG did rely on Mrs. Armetta's honesty and integrity as its employee in reviewing and approving the invoices through which Mr. Armetta and Aspira's commissions were concealed. Plaintiff has also alleged sufficient facts to suggest that when

Vertis was subsequently acquired by a company that refused to participate in Defendants' secret payment scheme, Mr. Armetta conspired with Mrs. Armetta to use her position as Interim Chief Marketing Officer at LCG, as well as "improperly released confidential information," and arranged for Defendant to retain a new vendor with which Aspira negotiated an even more lucrative covert commission arrangement. [*Id.* at ¶¶ 13-24]. Thus, while the Plaintiff does not explicitly allege that Mr. Armetta knew the extent of Mrs. Armetta's authority or that she had a duty to disclose conflicts, the covert nature of the alleged arrangement, coupled with the Armettas' alleged joint misuse of inside corporate information, are sufficient to satisfy the pleading standard that Mr. Armetta and Aspira were aware they were aiding and abetting Mrs. Armetta's improper exploitation of her position for their benefit and to the detriment of LCG. At the very least, Plaintiff has alleged that Mr. Armetta and Aspira acted with reckless disregard to the possibility that their self-dealing violated Mrs. Armetta's duties to LCG as an employee, which is sufficient to establish an aiding and abetting claim even in the absence of actual knowledge.

Plaintiff has also adequately alleged that Mr. Armetta and Aspira substantially assisted Mrs. Armetta's breach. As already discussed, Plaintiff has offered detailed allegations suggesting that Defendants worked closely together to conspire to capitalize on Mrs. Armetta's position at LCG for their own benefit and to the detriment of LCG. [*Id.* at ¶¶ 13-23].

Accordingly, Defendants' Motion to Dismiss Count II is DENIED.

### C. Count III: Constructive Fraud (against Mrs. Armetta)

Plaintiff contends that Mrs. Armetta, in her position as a fiduciary, committed constructive fraud by falsely representing the nature of Vertis's and FCL's invoices and failing to disclose her conflict of interest to LCG in order to induce LCG to pay the invoices for Aspira's benefit.  [Compl. at ¶¶ 45-50]. Defendants do not dispute that Plaintiff has adequately pled fraud, but move to dismiss the claim on the grounds that the Plaintiff has not adequately alleged the existence of a "confidential or special relationship" necessary to state a claim for constructive fraud.  [MTD at 18].

To establish an action for constructive fraud, a plaintiff must prove the elements of fraud and, in addition, the existence of a confidential or special relationship and breach of that relationship.  *Mitchell v. Mitchell*, 31 Conn. App. 331, 334–35 (1993). To state a claim for fraud, a plaintiff must allege that: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.  *Id.* at 336.  To establish the existence of a confidential or special relationship, the plaintiff must allege "an actual fiduciary relationship or another legally recognized fiduciary-type relationship."  *Metro. Enter. Corp. v. United Technologies Int'l Corp.*, 2006 WL 522384, at *4 (D. Conn. Feb. 27, 2006).  The Connecticut Supreme Court has held that a "relationship of special trust and confidence" giving rise to liability for constructive fraud may arise "by operation of law or voluntarily . . . such as . . . between parent and child, attorney and client,

guardian and ward, trustee and . . . trust . . . ." *Worobey v. Sibieth*, 136 Conn. 352, 359 (1949).

By adequately pleading that Mrs. Armetta had a fiduciary duty to LCG, *supra*, Plaintiff has alleged the existence of a confidential or special relationship between Mrs. Armetta and LCG sufficient to sustain a claim for constructive fraud. *See Metro. Enter. Corp.*, 2006 WL 522384, at *4, *supra*. Moreover, Defendants' attempt to argue that Mrs. Armetta was not in a confidential or special relationship with *the other defendants* is misplaced and confused. [MTD at 18]. The nature of Defendants' relationship to one another is irrelevant to a determination of whether a claim for constructive fraud has been established: constructive fraud liability is premised on a breach of duty arising from a fiduciary or confidential relationship between *the plaintiff and the defendant*. *See* Peter A. Alces, Law of Fraudulent Transactions § 2:17 (2014). In fact, Defendants do not challenge Plaintiff's assertion that Mrs. Armetta was in a confidential or special relationship with LCG. Defendants' Motion to Dismiss Count III is DENIED.

### D.  Count IV: Conversion (against all Defendants)

Plaintiff claims that through Defendants' improper arrangements with Vertis and FCL, Defendants assumed unauthorized possession and ownership of more than $1 million in LCG funds, and are liable for conversion. [Compl. at ¶¶ 51-54]. Defendants move to dismiss on the grounds that the payments received by Mr. Armetta and Aspira were authorized by LCG management, and that the payments constituted compensation for the services Defendants provided to

16

LCG.  [MTD at 18-19].  Defendants also contend that the allegations against Mrs. Armetta should be dismissed because "Mrs. Armetta is not relevant to the conversion claim."  [*Id.* at 19].

"The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 43 (2000) (internal quotations omitted).  To establish a prima facie case of conversion, a plaintiff must allege that 1) the material at issue belonged to the plaintiff; 2) the defendant deprived the plaintiff of that material for an indefinite period of time; 3) the defendant's conduct was unauthorized; and 4) the defendant's conduct harmed the plaintiff.  *News Am. Mktg. In-Store, Inc. v. Marquis*, 86 Conn. App. 527, 545 (2004) *aff'd*, 276 Conn. 310 (2005).

Defendants offer two arguments in support of their motion to dismiss the conversion claim.  First, they ask the Court to dismiss Plaintiff's Complaint on the basis that "Plaintiff cannot argue that Mrs. Armetta was the LCG employee who authorized payments made to Mr. Armetta and Aspira, as she did not have the authority to permit such payments to be made."  [MTD at 18].  The Court is at a loss to comprehend how this fact does anything other than lend support to Plaintiff's claim, as one of the elements that the Plaintiff must, and has, alleged, is that Defendants' possession of the payments it received from LCG was unauthorized.  [Compl. at ¶ 52].  Even if what Defendants intend to argue is that, because the payments were in fact authorized by Ms. DeWalt, Defendants' possession of those payments could not be unauthorized, that argument

constitutes a factual dispute and cannot be considered at this stage of the proceedings.  Plaintiff has adequately alleged that Defendants, including Mrs. Armetta, obtained more than $1 million belonging to LCG as a result of undisclosed (and therefore unauthorized) agreements Defendants negotiated with its vendors, and that LCG was harmed as a result.  [Compl. at ¶¶ 52-54].  At this stage, that is all Plaintiff has to allege.  Defendants' second argument, that the payments Mr. Armetta and Aspira obtained from LCG were owed to them for services rendered, also fails because it merely disputes Plaintiff's contention that Defendants took possession over property that was rightfully LCG's.  [MTD at 19]. Defendants' Motion to Dismiss Plaintiff's Count IV is therefore DISMISSED.

### E.  Count V: Violations of the Connecticut Unfair Trade Practices Act (against Mr. Armetta and Aspira)

Plaintiff alleges in its Complaint that Mr. Armetta and Aspira deceived LCG by entering into undisclosed agreements with Vertis and FCL to misappropriate funds from LCG, and that their course of misconduct in the operation of their business constitutes a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a) et seq. ("CUTPA").  [Compl. at ¶¶ 55-62]. Defendants move to dismiss Plaintiff's CUTPA claim by arguing that because Plaintiff knew Mr. Armetta and Aspira were providing significant services to LCG, their receipt of compensation for those services could not have been deceptive. [MTD at 19-20].

CUTPA makes it unlawful for a person to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade

18

or commerce." Con. Gen. § 42–110b(a).  To determine whether a practice is unfair or deceptive, courts examine whether the practice "(1) offends public policy; (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers, competitors or other business men."  *Van Law v. Proficio Mortgage Ventures, LLC*, 2010 WL 3926064, at *6 (D. Conn. Oct. 1, 2010), quoting *Hartford Elec. Supply Co. V. Allen–Bradley Co.*, 250 Conn. 343, 367–68 (1998). CUTPA gives a right to sue to "[a]ny person who suffers any ascertainable loss as a result of the use or employment of a method, act or practice prohibited by section 42-110b."  Con. Gen. § 42–110g(a).

The Court finds that Plaintiff has sufficiently pled a cause of action under CUTPA.  Defendants' argument that because LCG must have known Mr. Armetta and Aspira were not working for free, there is no set of facts under which Mr. Armetta and Aspira could have engaged in deceptive conduct, is patently unavailing.  [MTD at 19].  As Plaintiff rightly points out, "[e]ven if LCG was aware that David Armetta was doing work for the vendors on their LCG accounts, that does not mean that LCG was aware of the secret commission arrangement that Aspira had negotiated with the vendors or that the vendors' invoices were inflated to cover the cost of the secret commissions."  [Opp. at 14].

Defendants' further argument that Mr. Armetta and Aspira's conduct could not have been deceitful or unfair because they "had no agreement with LCG regarding services provided or compensation earned," and they "were never the direct recipients of funds from LCG, nor had they ever exercised authority or control over said funds," is fatuous.  [Reply at 6-7].  Defendants cannot argue, on

the one hand, that they were compensated for providing significant services to Plaintiff and then, on the other, argue that they cannot be liable for their conduct in providing those services because they were not directly compensated for their work.  Moreover, Defendants fail to cite any authority for the argument that CUTPA requires a direct contractual relationship between the parties.  To the contrary, Connecticut trial courts have held that a commercial relationship need not be direct or contractual for CUTPA to apply; rather, the relevant questions are whether the defendant's behavior implicated trade or commerce related to the plaintiff and whether that behavior directly harmed the plaintiff.  *See, e.g.*, *Mantell v. Varsos*, 2007 WL 1298808, at *6 (Conn. Super. Ct. Apr. 17, 2007); *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 2009 WL 2454993, at *4 (Conn. Super. Ct. 2009); *Nat'l Waste Associates, LLC v. TD Bank, N.A.*, 2012 WL 671937, at **8-9 (Conn. Super. Ct. Feb. 2, 2012).

Plaintiff has sufficiently alleged that Mr. Armetta and Aspira engaged in unethical and unscrupulous behavior both by using inside confidential information to steer business to particular vendors without LCG's knowledge and by negotiating and implementing secret commissions with those vendors in order to obtain unauthorized payments from LCG, and that LCG was directly injured by Plaintiff's conduct.  [Compl. at ¶¶ 57-59, 62].  Defendants advance no colorable argument to the contrary.  Defendants' Motion to Dismiss Count V is therefore DENIED.

**F.  Count VI: Unjust Enrichment (against all Defendants)**

Plaintiff's final claim is that all three Defendants have been unjustly enriched by the undisclosed and unauthorized payments they received from LCG through Vertis and FCL.  [Compl. at ¶¶ 63-66].  Defendants move to dismiss this claim on the grounds that Mr. Armetta and Aspira have not been unjustly enriched because they have provided substantial benefits to LCG that "far outweigh[ ] the amount of compensation they received", and that Plaintiff cannot assert a claim for unjust enrichment against Mrs. Armetta because her compensation was governed by an employment contract.  [MTD at 20-21].

Unjust enrichment is a theory of recovery that is based on the equitable principle that "it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another."  *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282 (1994) (internal quotation and citation omitted).  A plaintiff seeking recovery for unjust enrichment must establish that "(1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of the payment was to the plaintiff's detriment."  *Id.* at 283.

Plaintiff has adequately established that Mrs. Armetta benefited from LCG's overpayments to Aspira; that she unjustly failed to compensate LCG for those payments; and that retaining the payments was to LCG's detriment.  [Compl. at ¶¶ 10, 12-23, 32, 65].  Even if Mrs. Armetta's compensation as an employee of LCG was governed by an employment contract, here Plaintiff alleges that the additional commissions and premiums built into Vertis and FCL's invoices were

21

never authorized by or disclosed to LCG, and thus could not have been governed by such a contract.  [*Id.* at ¶¶ 13, 17, 21].  Furthermore, Defendants do not argue that the commissions and premiums resulted in any additional benefit to Plaintiff beyond the services Mrs. Armetta had already purportedly contracted to provide as a paid employee of the company.

Plaintiff has also adequately pled that Mr. Armetta and Aspira have wrongfully retained the LCG funds they received through overpayment to Vertis and FCL.  [*Id.* at ¶¶ 10, 12-23].  Defendants' contention that Mr. Armetta and Aspira provided substantial services in consideration of the payments they received is a factual argument that is improper for consideration on a motion to dismiss, where the court is obliged to accept as true all well plead facts. Defendants' Motion to Dismiss Count VI is also hereby DENIED.

### III.   Defendants' Rule 12(e) Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite statement "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  Rule 12(e) motions are generally disfavored because of their dilatory effect, and should not be granted if the allegations in the complaint comply with the notice pleading requirement of Rule 8, which is satisfied by a simple "short and plain statement of the claim showing that the pleader is entitled to relief."  *ProBatter Sports, LLC v. Sports Tutor, Inc.*, 246 F.R.D. 99, 101 (D. Conn. 2007) (quoting Fed. R. Civ. P. 8(a)).  This is because Rule 12(e) is meant to rectify incomprehensible or confused pleadings, not to add

22

detail or substitute for the discovery process. *Id.* As such, "a Rule 12(e) motion based on the belief that a better affirmative pleading by the opposing party will enable [the defendant] to provide a more enlightening or accurate response will be denied." *See* 5C Wright & Miller, Fed. Prac. & Proc. § 1377 (3d ed.). The granting of 12(e) motions is within the discretion of the district court. *Clayton v. City of Middletown*, 237 F.R.D. 538, 539 (D. Conn. 2006).

In their Motion for a More Definite Statement, Defendants attempt to argue that because Plaintiff's Complaint "ignore[s] . . . information known to Plaintiff," the Defendants "are left without the necessary notice to file a meaningful responsive pleading." [MTD at 4-12]. Plaintiff seeks to dismiss the motion on the ground Defendants do not articulate a legitimate basis for a motion under Rule 12(e). [Opp. at 1]. The Court agrees with Plaintiff, and finds that Defendants' motion constitutes an improper attempt to litigate the merits of the case at the pleading stage that is not supported by the law or facts.

Defendants make two claims in an effort to argue that Plaintiff's Complaint is impermissibly vague under Rule 12(e). Tellingly, neither of these claims suggests that Defendants cannot frame a responsive pleading to the Complaint as filed. First, Defendants contend that because the Plaintiff has already "conducted extensive discovery" through its internal investigation into the Armettas, Plaintiff's Complaint presents a "complex case" that requires more detailed pleading under *Twombly*, and is therefore impermissibly vague under Rule 12(e). [MTD at 5-6]. Defendants offer no relevant legal authority for this claim. Defendants then assert that in order to cure the impermissible vagueness

of Plaintiff's Complaint, the Court should consider additional facts presented by Defendants, and that these additional facts serve to defeat Plaintiff's claims. [MTD at 6-12].  Again, Defendants fail to cite any relevant legal authority for their position, instead attempting to reinterpret Second Circuit case law governing 12(b)(6) motions to buttress their position.  [MTD at 6].  Moreover, none of the additional "evidence" put forth by Defendants reveals anything more than a dispute over the facts of the case: a dispute that the Court cannot resolve at the pleading stage.

Defendants advance no colorable argument that the Complaint, as pled, is so ambiguous, incoherent or confused that Defendants cannot frame a responsive pleading.  At most, they merely contend that a more "accurate and complete set of allegations" will enable them to better refute Plaintiff's claims. [Reply at 2].  Because this is not a proper basis for relief under Rule 12(e), Defendants' Motion for a More Definite Statement is DENIED.

## IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED. Defendants' Motion for a More Definite Statement is also DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 30, 2014

24