UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

LEARNING CARE GROUP, INC.,
      Plaintiff/Consolidated Defendant,

      v.                                           CASE NO. 3:13-cv-1540 (VAB)

CARLENE ARMETTA,
      Defendant,

      v.

DAVID ARMETTA and ASPIRA
DIRECT MARKETING, LLC,
      Defendants/Consolidated Plaintiffs.

## RULING ON MOTION *IN LIMINE* AND VARIOUS TRIAL ISSUES

Learning Care Group, Inc. ("LCG") has filed a motion *in limine*, ECF No. 146,
seeking to preclude an amended expert report on damages offered by David Armetta and
Aspira Marketing Direct, LLC ("Aspira") as well as evidence of damages based on lost
profit and "disgorgement" measures.  For the reasons that follow, LCG's motion *in
limine*, ECF No. 146, is **GRANTED IN PART** and **DENIED IN PART**.  The Court will
allow aspects of the amended expert report to be admitted at trial, as explained further
below.  It will also allow evidence of lost profits, to the extent they are calculated based
on a proper methodology that is established at trial.  The Court will preclude all evidence
of disgorgement damages.

The Court also has identified two issues it would like to resolve in advance of
trial.  First, it will not allow Mr. Armetta and Aspira's expert to testify about theories of
causation, legal theories of recovery, or about which causes of actions apply to which

1

damages theories.  Such testimony would be inappropriate for an expert.  Second, because no party to this case has filed an answer, the jury will not be instructed on any affirmative defenses, including LCG's proposed affirmative defenses of unclean hands and mitigation of damages.[1]

## I.     Background

LCG owns and operates childcare centers.  Ruling on Mots. for Summ. J. 3, ECF No. 126.  Mr. and Mrs. Armetta were in the business of providing various types of marketing services, including direct mail, and created Aspira, a limited liability company, to engage in this business.  *Id.* at 1, 3.

LCG, Mr. Armetta, and Aspira went into business together to develop a direct mail marketing campaign for LCG.  *Id.* at 3.  After the dissolution of their business relationship, LCG filed a lawsuit against Mr. Armetta, Mrs. Armetta, and Aspira and Mr. Armetta and Aspira filed a separate lawsuit against LCG.[2]  This Court consolidated the lawsuits to proceed together in this case and has scheduled a trial on the various remaining disputed issues.

Mr. Armetta and Aspira initially disclosed an expert report authored by Daniel Cenatempo on August 25, 2014. The initial report contains an assessment of damages based on Aspira and Mr. Armetta's lost profits, which Mr. Cenatempo indicates apply to their legal claims of defamation, commercial disparagement, and a violation of the Connecticut Unfair Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq*.  LCG's

---

[1] If a party mentioned an affirmative defense in its motion to dismiss, the Court will consider allowing that party to assert that defense.  At this time, the parties have not expressed a desire to rely on an affirmative defense that appears in any of the relevant motions to dismiss.  Thus, there is no need to address this issue now.

[2] Mrs. Armetta also filed a separate complaint against LCG, but the Court has dismissed all of her affirmative claims.  *See* Ruling on Mots. for Summ. J. 18, ECF No. 126.

Ex. 1, Initial Damages Assessment, ECF No. 146 at 25.[3]  These calculations project the

money Aspira and Mr. Armetta would have made from their continued business

relationship with LCG and other possible clients they contend LCG prevented them from

acquiring.  *Id.* at 40-44, 144-51.  The lost profit figure also includes the value of some

invoices issued while Aspira worked for LCG that were allegedly never paid.  *Id.* at 39.

The initial report also contains calculations of damages called "LCG's Unjust

Profits," which consists of a portion of LCG's profits derived from new student

enrollments that Mr. Cenatempo opines came from the direct mail marketing campaign.

*Id.* at 45-58.  To calculate these damages, Mr. Centatempo calculated LCG's profits from

new enrollments allegedly caused by the direct mail marketing program.  He then took a

percentage of those profits that he attributes to Aspira and the Armetta's direct mail

marketing efforts.  The report indicates that this latter measure applies to the claims of

unjust enrichment, quantum meruit, and a violation of CUTPA.  *Id.* at 25.  The parties

refer to this measure of damages of damages as disgorgement damages.

Mr. Cenatempo's initial report also opines that LCG's actions caused these

various losses and that his calculations represent appropriate measures of damages for the

legal claims he identifies.  *See e.g. id.* at 22 (offering as one of his opinions that "Aspira

and David Armetta lost profits and income due to the wrongful acts of LCG…."); *id.* at

22 (offering as another opinion that David Armetta and Aspira were unlawfully treated

and not fully compensated for their work on the Direct Mail Program."); *id.* at 23

(opining that "LCG was unjustly enriched by taking the benefits of the Direct Mail

Program without fully compensating Carlene Armetta, David Armetta and Aspira"); *id.* at

---

[3] The initial report contains a number of damages analyses not mentioned in this ruling because they are only relevant to claims that have been dismissed from the case.

40 ("There is no cause for David Armetta's loss of income other than LCG's defamation and violation of [CUTPA]…").  The report also provides some general analysis of the legal recovery principles governing tort and contract causes of action.  *Id.* at 28-29.

Roughly one month after the report was disclosed, the Court dismissed the commercial disparagement, defamation, and CUTPA claims in deciding the parties' motions to dismiss.  Order on Mot. to Dismiss 16-37, 37-40, 45-50, ECF No. 71.  Thus, the causes of action upon which Mr. Cenatempo based his lost profits analysis were dismissed from the case in their entirety.  The Court also limited the measure of damages available for Mr. Armetta and Aspira's quantum meruit and unjust enrichment claims to the value of the services they provided and which LCG allegedly failed to compensate.  *Id.* at 55-56 ("Mr. Armetta and Aspira's claim for quantum meruit and unjust enrichment, limited to the amount of either the promised payment or the reasonable value of their services, is sustained and Defendant's Motion to Dismiss is DENIED.").  It dismissed Mrs. Armetta's quantum meruit and unjust enrichment claims without prejudice, and Mrs. Armetta did not re-plead the claims.  *Id.* at 51-54.  Thus, the Court dismissed the legal theories upon which Mr. Cenatempo indicated his disgorgement damages analysis was based.  No answers were filed after the Court's rulings on the motions to dismiss.

On July 1, 2015, the Court permitted Mr. Armetta and Aspira to amend their Complaint and add claims of negligent misrepresentation and fraud against LCG.  Order, ECF No. 98.  Discovery had ended on December 1, 2014, Amended Scheduling Order, ECF No. 62, and no party moved to reopen discovery or extend the deadline for

discovery after the Amended Complaint was filed.[4]  Nor did LCG file an answer

responding to the Amended Complaint.

On May 12, 2016, five weeks before trial and over one year after discovery had

closed, Mr. Armetta and Aspira disclosed an amended damages assessment, which is

dated May 9, 2016, and which now garners LCG's objection.  LCG's Ex. 2, Am.

Damages Assessment, ECF No. 146 at 162.  The amended report indicates that it replaces

the previous report "due to changes in counts in the Second Amended Complaint and new

information that has become available since the production of my first report."  LCG's

Ex. 2, Am. Damages Assessment, ECF No. 146 at 165.

The amended report provides a lost profits calculation that reflects the profits

Aspira and Mr. Armetta would have made from continuing their relationship with LCG.

*Id.* at 173-80.  The amended report also includes in its calculation the value of Aspira's

unpaid invoices, as the initial one did.  *Id.* at 169.  Mr. Cenatempo opines that the lost

profits "apply to the Common Law Fraud and Negligent Misrepresentation counts" and

that the unpaid invoices aspect applies to the "Unjust Enrichment and Quantum Meruit

counts."  *Id.*

The amended report also provides analysis of "LCG's wrongful profits" or

disgorgement damages, which reflects the portion of LCG's overall profits derived from

new enrollments from the direct mail marketing scheme that Mr. Cenatempo attributes to

the efforts of Aspira and Mr. Armetta.  *Id.* at 181-91.  As with the initial report, these

damages are calculated by examining the profits from new student enrollments allegedly

caused by the direct marketing plan and taking a percentage of those profits to reflect the

---

[4] Indeed, LCG indicated that it would not require more discovery if the motion were granted. Order 4, ECF No. 98.

amount for which Mr. Cenatempo believes Aspira and Mr. Armetta are responsible. *Id.*
The report also states that the calculations pertaining to the "disgorgement damages"
apply to the "Common Law Fraud and/or Unjust Enrichment" claims. *Id.* at 169.

Finally, as with the initial report, the amended report provides opinions on
causation and the legal recovery principles governing tort and contract-based causes of
action. *See e.g. id.* at 168 ("Aspira lost sales and profits and David Armetta lost income
due to the wrongful acts of LCG."); *id.* at 169 ("It is my understanding that LCG can be
disgorged of its wrongfully made profits if it is found liable for Common Law Fraud
and/or Unjust Enrichment."); *id.* at 175 ("Aspira's lost profits and David Armetta's lost
income were proximately caused by LCG's wrongful acts and are recoverable
damages."); *id.* at 171-72 (discussing "recovery principles").

The Court will first address the viability of the lost profits and disgorgement
damages theories in this case generally. It will then discuss the timeliness of the
amended expert report and the admissibility of the testimony it contains. Finally, it will
discuss the implications that stem from the fact that no party has filed an answer in this
case.

## II.     Viability of Lost Profits Damages Theory

Aspira and Mr. Armetta claim that they are entitled to lost profits if they prevail
on their fraud and negligent misrepresentation claims. Under Connecticut law, these
claims entitle successful plaintiffs to recover damages caused by the actions that made
the defendant liable. *See Kilduff v. Adams, Inc.*, 219 Conn. 314, 323 (1991) ("A plaintiff
in a fraud action is entitled to recover 'any consequential damages resulting directly from
the fraud.'") (citations omitted); *Leisure Resort Technology, Inc. v. Trading Cover*

*Assocs.*, 277 Conn. 21, 33 (2006) (in a fraud action, the measure of damages is either the "benefit of the bargain" or "out-of-pocket measure"); *Ridgeway v. Royal Bank of Scotland Grp.*, Civil Action No. 3:11-cv-976 (VLB), 2013 WL 1985016, at *27 (D. Conn. May 13, 2013) (noting that pecuniary losses and noneconomic damages caused by the negligent misrepresentation are recoverable on a successful negligent misrepresentation claim); Restatement (Second) of Torts §552B(1) (1977) ("The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause…."); *see also Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 72-73 (2005) (noting that a necessary element of a negligent misrepresentation claim is that the misrepresentation caused the plaintiff pecuniary loss).

LCG argues that (1) these damages are not recoverable on the causes of action that remain in this case; (2) Aspira received sufficient compensation for the services it performed; and (3) even if LCG is liable on these claims, none of its actions caused Aspira to lose profits. LCG's Br. 5-6, ECF No. 146; Reply Br. 8, ECF No. 152. Both of these issues represent mixed questions of law and fact that are best resolved by the jury at this stage. Accordingly, the Court will address LCG's concerns with jury instructions that define properly the types of damages that can be recovered on fraud and negligent misrepresentation claims and the definition of causation.

LCG also argues that lost profits are too speculative to be recoverable in this context, because they are based on "future contracts that never existed." LCG's Br. 6-11, ECF No. 146. The Court disagrees. To be recoverable, lost profits must be shown to a reasonable likelihood, not a mathematical certainty. *See Beverly Hills Concepts, Inc. v.*

*Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 69 (1998) (evidence must provide

sufficient basis to estimate lost profits with reasonable certainty); *Message Ctr. Mgmt.,*

*Inc. v. Shell Oil Prods. Co.*, 85 Conn. App. 401, 421 (2004) ("[D]amages related to future

lost profits cannot be calculated with mathematical certainty. Mathematical exactitude in

proof often is impossible.") (citation omitted); *Powerweb Energy, Inc. v. Hubbell*

*Lighting, Inc.*, No. 3:12CV220 (WWE), 2014 WL 1784082, at *9 (D. Conn. May 3,

2014) (same).

      The mere fact that the lost profit calculations here are based on future contracts

does not render them speculative, particularly where an expert has projected them by

relying on past profit data.  *See Beverly Hills Concepts, Inc.*, 247 Conn. at 64, 69 (1998)

("[L]ost profit damages… ought to be recoverable where the likelihood of future profits

can be established with reasonable certainty… Consequently, we have permitted lost

profits to be calculated by extrapolating from past profits."); *cf. Message Ctr. Mgmt.,*

*Inc.*, 85 Conn. App. at 409-10 (superior court properly excluded aspects of lost profits

estimate which was not based on "actual past sales statistics"); *New Eng. Dairies, Inc. v.*

*Dairy Mart Convenience Stores, Inc.*, No. CIV.A. 3:97CV894 (CFD), 2002 WL 229900,

at *13 (D. Conn. Feb. 4, 2002) (future profits "may be calculated by extrapolating from

past profits"); *see also Cheryl Terry Enters. v. City of Hartford*, 270 Conn. 619, 641-48

(2004) (affirming reliance on past experiences with bids as an appropriate basis to

extrapolate future lost profits from a bid); *see also* LCG's Ex. 1, Damages Assessment,

ECF No. 146 at 145 (analyzing Aspira's profits made in the years before its relationship

with LCG ended).  Thus, to the extent Mr. Cenatempo's lost profit calculations are based

on past profit data and are calculated using a sound methodology, evidence of those lost

profits calculations is admissible.

LCG also argues that the Court has already held that Mr. Armetta and Aspira have

failed to identify any "actual lost sales, contracts or customers" that were "proximately

caused by LCG's conduct."  LCG's Br. 8, ECF No. 146.  In making this argument, it

relies on an aspect of this Court's ruling on the motions to dismiss, where the Court

found that Aspira had failed to allege adequately special damages for a commercial

disparagement claim because the allegations about lost future business opportunities were

"too vague and imprecise."  Ruling on Mots. To Dismiss 39-40, ECF No. 71.  This

holding does not cover the remaining issues in this case.  Whether Aspira pled that it lost

business with sufficient specificity for a commercial disparagement claim is distinct from

whether Aspira and Mr. Armetta will be able to prove at trial that they suffered lost

profits to a reasonable certainty and that those lost profits were caused by LCG's alleged

fraud or negligent misrepresentation.

At this time, the Court does not have a basis to preclude evidence of Aspira's and

Mr. Armetta's lost profits. Accordingly, LCG's motion *in limine* with respect to lost

profits evidence is **DENIED** without prejudice to renewal at trial.[5]

To the extent Mr. Armetta and Aspira seek to apply this measure of damages to

their unjust enrichment and quantum meruit claims, the Court agrees with LCG that its

prior ruling has already limited the damages available on these claims to the reasonable

value of services Aspira and/or Mr. Armetta provided to LCG, including any unpaid

invoices.  Ruling on Mots. to Dismiss 56, ECF No. 71; Ruling on Mots. for Summ. J. 19-

---

[5] The Court will reconsider the admissibility of Mr. Cenatempo's testimony about lost profits at trial if his methodology is unsound or not based on Aspira's and Mr. Armetta's past profits earned from their relationship with LCG.

22, ECF No. 126.  Accordingly, it will instruct the jury not to consider evidence of lost profits in assessing damages on those two claims.

### III.      Viability of Disgorgement Damages Theory

Mr. Armetta and Aspira also claim a portion of LCG's profits under a disgorgement theory applied to their unjust enrichment and fraud claims.  The damages that Mr. Armetta and Aspira have labeled as disgorgement constitute the proportion of LCG's profits from new student enrollments, which they believe derived from their direct marketing program.  LCG argues that disgorgement damages do not provide a proper measure of recovery in this case.  LCG's Br. 12-14, ECF No. 146. The Court agrees that the fraud, negligent misrepresentation, and unjust enrichment do not entitle Mr. Armetta and Aspira to disgorgement damages.

With the respect to the unjust enrichment claim, as noted above, the Court has already held that Mr. Armetta and Aspira's unjust enrichment claim is limited to the amount of services they provided to LCG and for which LCG did not pay them.  Ruling on Mot. to Dismiss 56, ECF No. 71; Ruling on Mots. for Summ. J. 19-22, ECF No. 126. Thus, disgorgement damages are not available on the unjust enrichment claim against LCG.

With respect to the fraud claim, as noted above, if Mr. Armetta and Aspira prevail on their fraud claim, they would be entitled to any damages caused by LCG's fraudulent actions.  *See Kilduff*, 219 Conn. at 323 ("A plaintiff in a fraud action is entitled to recover 'any consequential damages resulting directly from the fraud.'") (citations omitted). However, there is no evidence that their relationship with LCG could have possibly entitled them to a portion of LCG's profits from new enrollments that occurred as a result

of the direct mail marketing program.  Making all inferences in favor of Aspira and Mr.

Armetta, the parties struck a deal whereby Aspira was paid a commission and Mr. and

Mrs. Armetta were compensated for their services.  *See* Ruling on Mots. for Summ. J. 4-

6, 9-10, ECF No. 126.  There is no evidence that the Armettas or Aspira ever expected to

be paid a portion of LCG's profits from new enrollments.  Thus, a fraud committed in the

court of these business relationships could not possibly have caused the Armettas or

Aspira to suffer that amount in damages.  *See Miller v. Appleby,* 183 Conn. 51, 57 (1981)

("The general rule in Connecticut in awarding damages in cases of this kind [,alleging a

fraudulent misrepresentation claim,] is… the benefit of the bargain damages, together

with any consequential damages resulting directly from the fraud.") (internal quotation

marks and citations omitted).

      LCG argues that the disgorgement damages are also not recoverable under the

negligent misrepresentation claim in this case.  LCG's Br. 12, ECF No. 146.  Neither the

amended expert report, nor Mr. Armetta's and Aspira's opposition brief appear to claim

that the disgorgement damages apply to this cause of action.  However, to the extent they

do seek to recover disgorgement damages for their negligent misrepresentation claim, the

same analysis the Court undertakes for fraud would apply.  Damages for negligent

misrepresentation constitute the pecuniary and noneconomic loss caused by the

defendant's misrepresentation.  *See e.g. Ridgeway*, 2013 WL 1985016, at *27.  Because a

misrepresentation could not have denied Mr. Armetta and Aspira a portion of LCG's

profits, they cannot recover disgorgement damages for a negligent misrepresentation

claim.

Because there is no legal cause of action in this case that would enable Mr. Armetta and Aspira to recover their disgorgement damages, the Court will not allow the jury to consider such evidence. Accordingly, LCG's motion *in limine* seeking to preclude evidence of disgorgement damages is **GRANTED**.

## IV.     Admissibility of Expert Testimony

LCG argues that Mr. Cenatempo's amended expert disclosure is inadmissible, because it was disclosed on the eve of trial and after the deadline for expert disclosures had passed. LCG's Br. 3-4, ECF No. 146. Nevertheless, the Court will allow testimony from the amended, late-disclosed expert report, so long as that testimony is confined to the data and calculations in that report that the Court has deemed admissible in this ruling. In addition, Mr. Cenatempo's opinions about causation, legal theories of recovery, and which measures of damages apply to which causes of action are inadmissible.

### A. Timeliness of Expert Disclosure

In assessing a late disclosure of an expert report, the Court must consider "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citation omitted).

Mr. Armetta and Aspira provide no explanation for why their report was provided on the eve of trial and many months after the close of discovery. However, much of Mr. Cenatempo's new report merely updates his numbers for his lost profits calculations to

account for the passage of time, making the tardiness of the disclosure have very minimal prejudicial effect.  Moreover, the Court's ruling has already limited Mr. Cenatempo's testimony significantly, precluding an entire damages theory and, as discussed below, will limit the scope of his testimony even further.  The Court does not believe that what remains is so prejudicial to LCG that it should be declared inadmissible.  Accordingly, the Court will not exclude the entirety of the amended expert report because it was disclosed late.

### B.  Appropriate Topics for Expert Testimony

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), courts have an gatekeeping obligation to ensure that expert testimony presented to juries is reliable and relevant.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (noting that under *Daubert*, the district court functions as a gatekeeper for expert testimony) (citation omitted); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (noting that the Court has a "gatekeeping requirement… to ensure the reliability and relevancy of expert testimony"); Fed. R. Evid. 702 (setting forth the admissibility requirements for expert testimony). While no party has raised any *Daubert* issues, "[t]he Court has the authority to raise [such] concerns *sua sponte* in order to fulfill [its gatekeeping] obligation."  *ROMAG Fasteners, Inc. v. Fossil, Inc.*, Civil No. 3:10cv1827(JBA), 2014 WL 1246554, at *2 (D. Conn. Mar. 24, 2014); *Brenord v. Catholic Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 188 & n.4 (E.D.N.Y. 2001) (engaging in analysis of expert under *Daubert* sua sponte and collecting cases where courts did the same).

To assure itself that expert testimony is admissible, courts must consider (1) whether the expert is qualified to opine about the matters on which he offers opinions and (2) whether his testimony will assist the trier of fact.  *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589-90 (expert must be qualified to give proffered opinion); *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (expert will be permitted to testify only if his testimony "'will assist the trier of fact to understand the evidence or to determine a fact in issue.'") (quoting Fed. R. Evid. 702); *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005).  It must also determine whether the expert testimony is sufficiently reliable by looking to whether "(1) [ ] the testimony is grounded on sufficient facts or data; (2) [ ] the testimony 'is the produce of reliable principles and methods'; and (3) [ ] 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702).

Mr. Cenatempo's opinions on legal theories of recovery and which damages theories match up with which causes of action are inappropriate subjects for expert testimony, because they are legal conclusions.  *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (an expert "is not qualified to compete with the judge in the function of instructing the jury"); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (expert opinion about legal conclusions is inadmissible because it "will usurp either" the trial judge's role "in instructing the jury as

to applicable law or the role of the jury in applying that law to the facts before it.") (internal quotation marks and citations omitted).

Mr. Cenatempo also possesses no qualifications that would make his opinions about legal issues reliable and admissible. "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) (citation omitted). Mr. Cenatempo has no legal training whatsoever, and, thus, is unqualified to opine on matters of law. *See* LCG's Ex. 2, Am. Damages Assessment, Curriculum Vitae, ECF No. 146 at 193.

Mr. Cenatempo also opines on what caused Mr. Armetta and Aspira's lost profits. Experts are entitled to provide opinions on loss causation, as conclusions of fact, assuming their testimony meets other admissibility requirements. *See e.g. In re Xerox Corp. Securities Litig.*, Civil Action No. 3:99CV02374 (AWT), 2009 WL 8556135, at *5 (D. Conn. Apr. 22, 2009) (holding that expert was permitted to provide opinion on loss causation, as a factual conclusion not a legal one, so long as that opinion was "supported by specific factual analysis"). As with all expert testimony, to be admissible such testimony must be reliable and must rest on an application of specialized knowledge to the issue of loss causation. *See e.g. Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation omitted) (expert testimony that is "speculative or conjectural" is inadmissible); *Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp. 2d 313, 337 (S.D.N.Y. 2012) ("An expert opinion is inadmissible as conclusory if it 'cannot reasonably be assessed for reliability.'") (citing Fed. R. Evid. 702, Advisory Committee Notes 2000 Amendments); *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 604-05 (S.D.W.

Va. 2013) (general causation opinion precluded where it was "based on nothing more than [the expert's] personal, unscientific observation" because it represented a "subjective, conclusory approach that cannot reasonably be assessed for reliability and that Rule 702 is designed to exclude."); Fed. R. Evid. 702(a) (expert testimony must be based on an application of the "expert's scientific, technical, or other specialized knowledge" to "help the trier of fact to understand the evidence or to determine facts in issue").

Here, Mr. Cenatempo's testimony about causation is too conclusory and unreliable to be admissible. He merely states that Mr. Armetta's and Aspira's lost profits were caused by LCG, because "[t]here is no cause" other than the violations of law alleged. *See e.g.* LCG's Ex. 2, Am. Expert Report, ECF No. 146 at 175. This kind of conclusion is problematic because it integrates a legal conclusion, but also because it does not indicate that Mr. Cenatempo applied any specialized methodology, or even any analysis, to reach this conclusion. Accordingly, Mr. Cenatempo's testimony about causation must be precluded as unreliable and inappropriate expert testimony.

In sum, the Court will not allow Mr. Cenatempo to testify about causation, legal theories of recovery, or which legal causes of action apply to his damages theories. He will only be permitted to testify about the lost profits data and the method he used to calculate those figures.

## V.      The Failure to File Answers

As the Court noted in its Ruling on the Motions for Summary Judgment, none of the parties in this lawsuit have filed answers. Ruling on Mots. for Summ. J. 1 n.1, ECF No. 126. Under Federal Rule of Civil Procedure 12(a)(4), the parties were obligated to

file answers fourteen days after the Court denied the motions to dismiss. Fed. R. Civ. P.
12(a)(4)(A) ("[I]f the court denies the motion… the responsive pleading must be served
within 14 days after notice of the court's action…."). The failure to file answers has two
consequences that are relevant to trial of this matter. The Court would like to clarify the
significance of these consequences now.

First, affirmative defenses not asserted in an answer are waived. *Travellers Int'l,
A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) ("The general rule
in federal courts is that a failure to plead an affirmative defense results in a waiver."); 5
Charles A. Wright *et al.*, *Federal Practice & Procedure* §1278 (3d ed. 2016) ("[A]
failure to plead an affirmative defense as required by Federal Rule 8(c) results in the
waiver of that defense and its exclusion from the case."). Because no answers have been
filed in this case, the parties have waived all affirmative defenses. At this stage, LCG has
indicated a desire to assert the affirmative defenses of mitigation of damages and unclean
hands. *See* LCG's Proposed Jury Instructions, ECF No. 148-3 at 24-25. Because LCG
did not list these defenses in an answer, and did not mention them in its Motions to
Dismiss targeting Mr. Armetta and Aspira, ECF Nos. 33, 34, it will not be permitted to
assert these defenses and the Court will not instruct the jury about them.

Second, because the parties have failed to file answers, all factual allegations
contained in the operative Complaints in this case are deemed admitted. *See Finkel v.
Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009) (noting that by failing to "oppose" a
lawsuit, or by failing to file an answer, a defendant "is therefore deemed to have admitted
all well-pleaded allegations in the complaint pertaining to liability"); *see also e.g.*, *Joseph
v. HDMJ Restaurant, Inc.*, 970 F. Supp. 2d 131, 143-44 (E.D.N.Y. 2013) (deeming

admitted the allegations in the complaint where no answer was filed after the denial of a motion to dismiss); *Hausken v. Lewis*, No. C12-5882 BHS-JRC, 2014 WL 1912058, at *1, 3 (W.D. Wash. May 12, 2014) (affirming a Magistrate Judge's conclusion that where a motion to dismiss was denied in part, defendants needed to file an answer to prevent the entry of default).

Given the unique posture of this case, where the parties filed separate complaints against one another at the same time concerning the same facts, it is clear that the facts are disputed in this matter. In addition, neither party has moved for default. Thus, the Court will not parse what aspects of the Complaints contain salient facts that have been admitted. Instead, it will ask the parties to bring to the Court's attention, either at trial or in the charge conference, any issues of fact that they believe have been admitted because no answers were filed. Any such admitted facts are proven and need not be decided by the jury.

## VI.    Conclusion

For all of the foregoing reasons, LCG's Motion *In Limine*, ECF No. 146, is **GRANTED IN PART** and **DENIED IN PART**. The Court will allow evidence of Aspira's and Mr. Armetta's lost profits, including evidence of the unpaid invoices. It precludes evidence of disgorgement damages. The Court also precludes Mr. Cenatempo's testimony about causation, legal theories of recovery, and which measures of damages apply to which causes of action. It will allow the aspects of the late-disclosed expert report that this ruling has otherwise found admissible.

In addition, because the parties have failed to file answers, the Court will not permit them to assert any affirmative defenses. If some affirmative defenses were

mentioned in the motions to dismiss, it will consider the availability of those defenses at a later time.  It also asks the parties to bring to its attention, either at trial or during a charge conference, any facts they believe to have been admitted as a result of the failure to file an answer.

       SO ORDERED this 12th day of June 2016 at Bridgeport, Connecticut.

                /s/ Victor A. Bolden
               VICTOR A. BOLDEN
               UNITED STATES DISTRICT JUDGE