UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

LEARNING CARE GROUP, INC.,
    Plaintiff/Consolidated Defendant,

    v.                        CASE NO. 3:13-cv-1540 (VAB)

CARLENE ARMETTA,
    Defendant,

    v.

DAVID ARMETTA and ASPIRA
MARKETING DIRECT, LLC,
    Defendants/Consolidated Plaintiffs.

## RULING ON MOTION FOR SANCTIONS

David Armetta, Carlene Armetta, and Aspira Marketing Direct, LLC ("Aspira") filed a motion for sanctions, claiming that Learning Care Group, Inc. ("LCG") destroyed a laptop used by Stacy DeWalt allegedly containing crucial evidence to their case. Mot. for Sanctions, ECF No. 130. They argue that this destruction or spoliation of evidence entitles them to sanctions and ask that the Court either find in their favor on all claims in the case or instruct the jury to draw an adverse inference from the non-production of the laptop's contents. Aspira's Br. 4, ECF No. 130. They also ask for attorneys' fees for time spent uncovering LCG's alleged discovery abuse and making this motion. *Id.* at 5.

LCG does not dispute that it destroyed the laptop and that a number of Ms. DeWalt's e-mails are not available. However, it argues that sanctions are not warranted here because the Armettas and Aspira have failed to show that the laptop's contents were

1

relevant to this case and that LCG acted with a sufficiently culpable state of mind. *See* LCG's Opp. Br., ECF No. 140.

For the reasons that follow, the Motion for Sanctions, ECF No. 130, is **GRANTED** with respect to attorneys' fees and costs but **DENIED** as to the remainder of relief requested.

## I. Background

As described in more detail in other rulings[1], Aspira, Mr. Armetta, and Mrs. Armetta were in the business of providing marketing services. LCG hired Mrs. Armetta directly as an employee. It hired Mr. Armetta and Aspira as independent third-party contractors. This lawsuit arises out of the dissolution of these business relationships.

Stacy DeWalt was LCG's Chief Marketing Officer and a key point of contact for the Armettas and Aspira. *See* Ruling on Mots. for Summ. J. 3-14, ECF No. 126. In particular, and crucial to their factual narrative of the case, Aspira and Mr. Armetta claim that Ms. DeWalt knew about a commission LCG paid to them for their direct mail marketing services. Aspira's Br. 5-6, ECF No. 130; *see also* Ruling on Mots. for Summ. J. 5, ECF No. 146. They also claim that she approved a business arrangement, which may represent a conflict of interest, whereby Mrs. Armetta was employed by LCG and continued to be a member of Aspira, while LCG continued to do business with Aspira. Aspira's Br. 6, ECF No. 130; *see also* Ruling on Mots. for Summ. J. 6-9, ECF No. 146.

Ms. DeWalt left LCG on January 24, 2013, before this lawsuit was filed. Per LCG's policy, after she left the company, her laptop was slated for recycling, Aspira's

---

[1] The Court will only summarize the facts relevant to the resolution of this motion, because it has already addressed the factual background of this case at length in its ruling on the parties' summary judgment motions. Ruling on Mots. for Summ. J., ECF No. 126.

Ex. B, Letter dated June 4, 2015 at 1, ECF No. 130-1, and was recycled in October 2013. *Id.*; Aspira's Ex. I, Malik Aff. ¶8, ECF No. 130-3.

LCG's employees e-mails are typically backed up to a server, rather than only being saved locally on any given computer. *See* Aspira's Ex. B, Letter dated June 4, 2015 at 2, ECF No. 130-1; Aspira's Ex. G, Letter dated Oct. 16, 2014 at 2, ECF No. 130-1; Aspira's Ex. I, Malik Aff. ¶¶4-7, ECF No. 130-3. As a result, recycling a computer ordinarily should not result in the destruction of e-mails or other electronic documents that may be relevant to litigation. However, Ms. DeWalt also deleted a number of e-mails that had not been backed up on LCG's server. Aspira's Ex. G, Letter dated Oct. 16, 2014 at 2, ECF No. 130-1; Aspira's Ex. I, Malik Aff. ¶7, ECF No. 130-3. Thus, a number of Ms. DeWalt's e-mails were not on LCG's server at the time she left the company and, once the laptop was destroyed, they were completely gone.

On March 26, 2014, Mrs. Armetta served LCG with a request for production of documents in this lawsuit, seeking all communications from Stacy DeWalt relevant to "marketing or creative strategy for the partnership and/or direct mail marketing programs." Aspira's Ex. C, Document Requests dated Mar. 26, 2014 at 7, ECF No. 130-1. LCG gathered e-mails responsive to this request by pulling them from its server. Aspira's Ex. I, Malik Aff. ¶¶ 4-5, 7, ECF No. 130-3. This method excluded the e-mails that Ms. DeWalt had deleted, but none of the parties knew about this deficiency at the time. *Id.* ¶7.

It was only later, in July 2014, when the Armettas and Aspira realized that Mrs. Armetta had produced an e-mail sent to Ms. DeWalt that they did not have in the production of Ms. DeWalt's e-mails that prompted an investigation. Aspira's Ex. E,

3

Pastore Decl. ¶3, ECF No. 130-1; Aspira's Br. 8-9, ECF No. 130. The parties discovered that many of Ms. DeWalt's e-mails were not available on LCG's server, because she had deleted them. By this time, Ms. DeWalt's laptop had already been destroyed.

Aspira and the Armettas argue that beginning in August 2013, when LCG launched an internal investigation into its business relationship with Aspira and the Armettas, and certainly by September 2013, when Mrs. Armetta filed a lawsuit against LCG, LCG was under an obligation to preserve all evidence related to this case, including Ms. DeWalt's laptop. Aspira's Br. 7-8, 20, ECF No. 130. They contend that if the physical laptop existed today, they would likely have been able to recover many of the deleted e-mails. Aspira's Ex. E, Pastore Decl ¶7, ECF No. 130-1. They claim to have an expert who believes this to be the case, but have not submitted any report or affidavit from that individual. *Id.* LCG disputes whether such e-mails would be recoverable, but also does not submit any exhibits or other information about that position.

**II.    Discussion**

Federal district courts have "broad discretion" in deciding whether and how to sanction parties for spoliation of evidence. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge….") (citations omitted). To obtain sanctions based on the spoliation of evidence, the movant must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable

trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks and citation omitted) (when seeking an adverse inference instruction); *see also e.g.*, *Centrifugal Force, Inc. v. Softnet Communications, Inc.*, 783 F. Supp. 2d 736, 740-41 (S.D.N.Y. 2011) (when seeking any sanction for spoliation); *Nicholson v. Bd. of Trustees for Conn. State Univ. Sys.*, No. 3:08cv1250(WWE), 2011 WL 4072685, at *4 (D. Conn. Sept. 12, 2011) (same).

      LCG does not dispute that it destroyed the laptop at a time when there was an obligation to preserve it.[2]  Instead, LCG argues that no sanctions should be imposed because there is insufficient evidence that the laptop contained relevant evidence, that the evidence on the laptop could have been obtained through other discovery, and that it lacked the requisite state of mind to warrant the imposition of sanctions.  With respect to the latter point, LCG argues that an amended version of the Federal Rules of Civil Procedure applies which heightens the state of mind required to grant the sanctions Aspira and the Armettas seek.  LCG's Opp. Br. 3-7, ECF No. 140.  In other words, LCG admits that the first prong of the spoliation test has been satisfied but contests the second and third prongs.

      The Court finds that there is enough evidence to conclude that the laptop contained information significant enough to warrant the imposition of sanctions.  It also finds that it would be unfair to apply the new amendments to the Federal Rules of Civil Procedure to this motion and that LCG acted negligently in destroying the laptop.

---

[2] Nor could it dispute this fact, as it destroyed the evidence around one month after litigation was initiated. *See Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (The "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed….").

Accordingly, sanctions are appropriate here.  The Court will award the Armettas and Aspira reasonable costs and attorneys' fees, as described below.  It will not issue a default, enter an order finding the Armettas and Aspira not liable on LCG's claims, or give an adverse inference instruction to the jury.

### A.  Relevance of Laptop

For this Court to impose sanctions for the destruction of evidence, the moving party must show that the evidence was relevant to a party's claim or defense.  *Residential Funding Corp.*, 306 F.3d at 107.  The nature of this inquiry varies depending on the culpability of the party who destroyed the information.

Proof of bad faith alone is "sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party."  *Id.* at 109.  In some circumstances, where the conduct is particularly egregious, proof of gross negligence alone also suffices.  *Id.*

Here, the Court finds no evidence of bad faith or gross negligence.  LCG destroyed the laptop in the ordinary course of business.  While it should not have done so, because it was obligated to preserve the laptop, there is no evidence that LCG acted in bad faith or intentionally destroyed the laptop.  Indeed, the destruction of old technology equipment was a routine business practice for LCG and not generally an indefensible one.  Moreover, the laptop was slated for destruction several months prior to the filing of the litigation and was destroyed shortly after litigation was filed.  LCG's failure to save the laptop from destruction was careless, but not grossly so.  *See e.g. GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 357 (S.D.N.Y. 2012) (The destroying party's "failure to take any steps beyond [ ] general backup procedures to ensure that [a

witness's] emails were preserved, even after litigation was anticipated, plainly constitutes negligence."); *see also generally R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010) (To fulfill its preservation obligation, "a litigant must take affirmative steps to prevent inadvertent spoliation… [including] suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence.")

Without evidence of bad faith or gross negligence, to show relevance, a movant must produce evidence such that "a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Residential Funding Corp.*, 306 F.3d at 109 (internal quotations, alteration, and citation omitted). In other words, the party must specify, to some degree, the type and substance of the destroyed evidence and that the evidence was favorable to his position in the lawsuit. *Id.* at 108-09; *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) ("[T]he concept of 'relevance' encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant"). However, in undertaking this inquiry, the Court is mindful that it cannot hold the Armettas and Aspira to too strict a standard of proof, because doing so would "allow parties who have destroyed evidence to profit from that destruction." *Residential Funding Corp.*, 306 F.3d at 109 (internal quotation marks, alteration, and citations omitted). The level of proof required in this context is somewhere below that required to survive summary judgment. *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998).

In addition, negligent or intentional acts by the party who destroyed the evidence that "hinder discovery" can support an inference that the evidence would have harmed

7

the destroying party. *See Residential Funding Corp.*, 306 F.3d at 110 ("[I]ntentional or grossly negligent acts that hinder discovery support" an inference that the destroyed evidence is harmful to the destroying part, "*even if* those acts are not ultimately responsible for the unavailability of the evidence…") (emphasis in original). The Court can also consider the destroying party's preservation practices generally in deciding whether to impose sanctions. *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (The Court may consider the "failure to adopt good preservation practices" as "one factor in the determination of whether discovery sanctions should issue.") (internal quotation marks and citation omitted); *see also Doe v. Norwalk Community Coll.*, 248 F.R.D. 372, 379 (D. Conn. 2007) (when a duty to preserve exists, and the defendant breaches that duty, "any destruction of documents is, at a minimum, negligent.") (citation and internal quotation marks omitted).

The Armettas and Aspira contend that the laptop contained relevant evidence because Ms. DeWalt was their main contact at LCG and her conduct and knowledge are central to the claims in this case. Aspira's Br. 3, 5-7, ECF No. 130. They identify one e-mail relevant to their case that they were able to discover, attached to their motion as Exhibit A, and argue that the destroyed laptop must have contained countless more like it. In particular, they contend that Mrs. Armetta likely had exchanges with third parties in which she discussed the fee arrangement LCG had with Aspira. They do not otherwise specify the nature of the e-mails they believe the laptop would provide to them.

They also describe at length how long it took LCG to realize that the e-mails were missing from the server and to communicate clearly that the laptop had been destroyed. Aspira's Br. 8-16, ECF No. 130. Indeed, it took nearly six months after Aspira and the

8

Armettas discovered the missing e-mails for LCG to tell them that it had destroyed the laptop. *Id.* at 8-12 (the parties identified the problem with Ms. DeWalt's e-mails in late July 2014 and LCG told them the laptop had been destroyed in early December 2014). It took another six months for LCG to convey that it had destroyed the laptop in October 2013, after the litigation had been filed. *Id.* at 15-16 (noting the first mention of the date of destruction occurred in June 2015). This delay hindered discovery and, therefore, raises an inference that the laptop contained evidence unfavorable to LCG. *See Residential Funding Corp.*, 306 F.3d at 109.

Finally, LCG's document preservation practices are not ideal. Premised on the notion that correspondence was saved on the server, LCG's preservation protocol failed to require that physical hardware be kept. As a result, LCG should have carefully examined any courses of action that caused e-mails to be deleted from the server. Their failure to do so was negligent. *See e.g.*, *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 121 (S.D.N.Y. 2008) (finding that the defendant had been negligent in taking adequate "measures to preserve the ESI of key executives" because "none of the key employees' computers [were] backed up" until two years after the plaintiff's request to preserve documents was made and one employee's "downloaded e-mails were not preserved anywhere else in the system").

Taking all of these facts together, Aspira and the Armettas have produced sufficient evidence from which the Court can conclude that the laptop contained information relevant to this lawsuit. Thus, it has satisfied its burden on the third prong of the test for spoliation.

LCG also argues that there is insufficient evidence that the deleted e-mails on the laptop were recoverable. Although the record is thin on this point, Aspira and the Armettas have submitted an affidavit from their lawyer indicating that the e-mails would be recoverable. LCG has submitted no factual averments about recoverability whatsoever. While ideally Aspira and the Armetta's affidavit should have been from an information technology expert, rather than from their attorney, LCG has not submitted any evidence to controvert their position that the e-mails were recoverable.

The Court does agree with LCG that Aspira and the Armettas could have obtained the information they seek from the laptop from other sources. Because e-mails are sent from one person to another, they can be sourced from two places. Thus, any prejudice the Armettas and Aspira suffered from this destruction is limited and could have been further diminished by third-party discovery. However, this analysis does not go toward the question of whether sanctions are appropriate but rather the type of sanction the Court imposes, which the Court will discuss further below. *See e.g. West*, 167 F. 3d at 779 (relevant inquiry to the type of sanction imposed is the desire to place the prejudiced party in the same position he would have been without the wrongful act). Moreover, it also does not mean that the Armettas and Aspira suffered no prejudice, because to discover the information they would have needed to conduct additional discovery of additional third parties at their expense.

### B. LCG's State of Mind

As the Court noted above, there is no evidence that LCG acted in bad faith or intentionally destroyed the laptop. However, the Court does find that the behavior was negligent. LCG contends that negligence is not a sufficiently culpable state of mind to

warrant sanctions, because an amended version of the Federal Rules of Civil Procedure applies to this case.  The Court disagrees.

The December 1, 2015 Amendments to the Federal Rules of Civil Procedure made a significant change to the standards governing spoliation issues.  In particular, the amendments added Rule 37(e)(2) which requires a showing that the destroying party "acted with the intent to deprive another party of the information's use in the litigation" for the Court to dismiss an action, enter default judgment, or "instruct the jury that it may or must presume the [lost] information was unfavorable to the party."  Fed. R. Civ. P. 32(e)(2)(B)-(C).[3]  In other words, to award the default and adverse inference sanctions Aspira and the Armettas seek under the new rules, they need to show that LCG destroyed Ms. DeWalt's laptop "with intent to deprive" them of her e-mails for use in this litigation.

Prior to the enactment of these new rules, the Armettas and Aspira would have only needed to show that LCG was negligent to obtain an adverse inference instruction, along with all of the other required elements mentioned above.  *See Residential Funding Corp.*, 306 F.3d at 108 (ordinary negligence can satisfy the "culpable state of mind" requirement for spoliation sanctions); *Norwalk Community Coll.*, 248 F.R.D. at 379 (same). The state of mind requirement for entering default or dismissal of a case is "willfulness, bad faith, or fault on the part of the sanctioned party."  *West*, 167 F.3d at 779.  Thus, regardless of whether the new or old rules apply, entering default is inappropriate here.  But the appropriateness of providing an adverse inference instruction to the jury depends on which version of the rules applies.

---

[3] The prior version of the rule read as follows in full: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as the result of the routine, good faith operation of an electronic information system."  *See* Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendment.

When Chief Justice Roberts transmitted this amendment to the rules on April 29, 2015, he included an order providing that "the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." *CAT3, LLC v. Black Lineage, Inc.*, 14 Civ. 5511 (AT)(JCF), ___ F. Supp. 3d ___, 2016 WL 154116, at *5 (S.D.N.Y. Jan. 12, 2016) (quoting 2015 U.S. Order 0017); *see also* 28 U.S.C. §2074(a) (the Supreme Court may apply new rules to pending proceedings in federal court except "to the extent that… the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies."). Here, the Court finds that applying the new rules to this motion would be neither just nor practicable, because the parties first raised this issue in September 2015, prior to the application of the new rules.

Under the old rules, the Armettas and Aspira have met their burden by showing LCG was negligent. Thus, the Court will proceed to examine what types of sanctions are appropriate in light of LCG's conduct.

**C. Type of Sanction**

In determining the appropriate sanction for spoliation, courts consider what will "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West*, 167 F. 3d at 779 (citation omitted). Sanctions for spoliation may include an award of expenses and attorneys' fees, an instruction for the jury to draw an adverse inference from the absence of the evidence to the entry, and default judgment.

*See West*, 167 F.3d at 780 (providing examples of appropriate adverse inference instructions); *Mastr Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Securities, Inc.*, 295 F.R.D. 77, 82 (S.D.N.Y. 2013) (noting that this range of sanctions is available where spoliation is found).  However, sanctions that dispose of entire claims or cases on the merits are drastic remedies and should be imposed only in the most extreme circumstances and typically after the consideration of alternative, less drastic sanctions. *See West*, 167 F.3d at 779.

      The Court believes that awarding reasonable attorneys' fees and costs, to be paid by LCG, is an appropriate sanction here.  The Court finds LCG's behavior to be negligent and somewhat troubling.  It believes that a payment of reasonable attorneys' fees will sufficiently deter LCG from doing this again and is proportionate to the prejudice the Armettas and Aspira suffered as a result of the destruction of the laptop. They may submit documentation within thirty (30) days of the date of this Order indicating their costs and the number of hours and billing rates for work they did arising from the spoliation issue. *See Norwalk Community Coll.*, 248 F.R.D. at 381-82 (awarding costs arising from "the discovery necessary to identify alternative sources of information or from the investigation and litigation of the document destruction itself"); *Prezio Health, Inc. v. Schenk*, 3:13 CV 1463 (WWE), 2016 WL 111406, at *3 (D. Conn. Jan. 11, 2016) (awarding attorneys' fees for spoliation "incurred in pursuing this discovery issue"); *see also generally Gutman v. Klein*, No. 03 Civ. 1570(BMC), 2009 WL 3296072 (E.D.N.Y. Oct. 13, 2009).

      As discussed above, it will not grant default because LCG's conduct was not willful or in bad faith.  *West*, 167 F.3d at 779; *Nicholson*, 2011 WL 4072685, at *6

13

(noting that "egregious conduct" warranting the grant of default includes "intentional destruction of evidence such as burning or shredding documents, wiping out a computer hard drive or willful noncompliance with discovery obligations"). It also will not give an adverse inference instruction, because such a penalty would be greater than necessary to address LCG's conduct in this case. The Second Circuit has recognized that the sanction of an adverse inference "*may be appropriate in some cases* involving the negligent destruction of evidence, a sanction is by no means mandatory." *Twitty v. Salius*, 455 F. App'x 97, 99 (2d Cir. 2012) (citations and quotation marks omitted) (emphasis in original). Given the relatively weak showing of relevance of the missing documents and the nature of LCG's conduct, the Court does not believe an adverse inference is warranted.

### III.  Conclusion

The Court finds that the Armettas and Aspira have satisfied their burden of showing that LCG destroyed evidence relevant to this case in a negligent way and that some sanction is appropriate. However, the behavior here falls short of what is required for an entry of default, an order finding in favor of the Armettas and Aspira on all claims, or an adverse inference instruction. Instead, the Court awards reasonable costs and attorneys' fees incurred as a result of the spoliation. Accordingly, the Motion for Sanctions, ECF No. 130, is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED** this 17th of June 2016 at Bridgeport, Connecticut

    /s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE